UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE M. ROSS,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF LAKE, et al.,<br><br>    Defendants. | Case No. 24-cv-09475-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 17 |

On December 30, 2024, Andre M. Ross sued County of Lake, Lake County Sheriff's Office, and individuals employed by these agencies. Mr. Ross alleges violations of his Fourth and Fourteenth Amendment rights when Defendants tagged his car for abatement, arrested him, and completed jail booking procedures. Now pending before the Court is Defendants' motion to dismiss. Having carefully considered the parties submissions, and with the benefit of oral argument on May 22, 2025, the Court GRANTS Defendants' motion to dismiss with leave to amend in part.

**COMPLAINT ALLEGATIONS**

At approximately 9:00 p.m. on August 23, 2023, Mr. Ross "confronted an adult male intruder on the Premises [his home in County of Lake] who had broken into a locked motor vehicle thereby setting off the vehicle's alarm." (Dkt. No. 1 ¶ 1.) Mr. Ross "fire[d] a warning shot from his 12-guage shotgun in order to get the intruder(s) attention and hopefully to scare the intruder(s) away." (*Id.*) However, "the intruder(s) breaking into Mr. Ross's motor vehicle chose not to run away." (*Id.*) "Neighbors and other persons were present to observe and overhear the verbal exchanges that occurred after Mr. Ross encountered the intruder." (*Id.*)

When deputies from Lake County Sheriff's Office responded to the reported burglary

incident, "Mr. Ross supplied . . . his own description of pertinent facts and circumstances in addition to responding to the deputies' questioning." (*Id.* ¶ 2.) Mr. Ross was arrested and transported to Lake County Hill Road Jail Facility. (*Id.* ¶¶ 1, 3.) There, persons employed by Lake County received Mr. Ross's personal information, made a jail-booking intake photograph, and retrieved a sample of his DNA using a mechanical swab device inserted into his mouth. (*Id.* ¶ 3.) Shortly thereafter, the mugshot "and portions of the personal data supplied by Mr. Ross at the time of his booking[] were rendered publicly accessible and immediately downloadable by the defendant's posting." (*Id.*)

Mr. Ross "filed a timely government tort claim" in February 2024, which was subsequently rejected. (*Id.* ¶ 19.) In December 2024, Mr. Ross filed suit in this Court, suing County of Lake; Lake County Sheriff's Office; Sheriff of Lake County, Rob Howe; three Deputy Sheriffs employed by Lake County Sheriff's Office and County of Lake, Demetrius Donaldson, Jeffrey Mora, and Corey Paulich; Director of Lake County Community Development Department and Lake County Abandoned Vehicle Abatement Authority, Mireya G. Turner; and a Code Enforcement Office trained and employed by Lake County Community Development Department and Lake County Abandoned Vehicle Abatement Authority, Officer C. Colen (collectively, "Defendants").[1] The complaint alleges three causes of action: (1) unlawful arrest and jail booking procedures in violation of the Fourth Amendment; (2) violation of Mr. Ross's state law rights; and (3) unlawful search of Mr. Ross's property in violation of the Fourth and Fourteenth Amendments. As discussed below and as Defendants acknowledge, these causes of action include several "embedded claim[s]." (Dkt. No. 17 at 9.) Mr. Ross, who "has been a member in good standing of the California State Bar since May of 1995," (Dkt. No. 18 at 2), is representing himself in this action.

---

[1] The complaint's caption also lists Lake County Community Development Department and Lake County Abandoned Vehicle Abatement Authority as defendants, (Dkt. No. 1 at 1), but these entities are not listed as parties in the complaint, (*id.* at 4-5). The motion to dismiss is on behalf of "County of Lake (also sued as Lake County Community Development Department, Lake County Abandoned Vehicle Abatement Authority)" and the individual defendants. (Dkt. No. 17 at 2.) Consistent with Defendants' motion to dismiss, the Court understands the claims against Lake County Community Development Department and Lake County Abandoned Vehicle Abatement Authority are encompassed by claims against County of Lake.

1   In March 2025, Defendants moved to dismiss the complaint.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint where the action fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Under Federal Rule of Civil Procedure 8(a)(2), a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 554 (cleaned up). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). However, even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (cleaned up). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

If a Rule 12(b)(6) motion is granted, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned up).

## DISCUSSION

### A.  Vehicle Tagging Claims (Count Three)

Attached to the complaint is a Notice of Vehicle Abatement. (Dkt. No. 1 at 17-20.) The

3

Notice—addressed to Mr. Ross as the registered owner of a vehicle "on/or adjacent to the property located at: . . . 8710 Wight Way Kelseyville CA"—is dated August 18, 2023. (*Id.* at 17.) The Notice states "Lake County Code Enforcement has identified [that vehicle] to be a public nuisance, abandoned, wrecked, dismantled, or inoperable" and provides "ten (10) days from the date of this letter to remove the vehicle." (*Id.*) In Count Three, Mr. Ross alleges the posting of such Notice violated Mr. Ross's Fourth and Fourteenth Amendment rights. Defendants move to dismiss on the ground both claims fail as a matter of law.

### 1.     Fourth Amendment

Mr. Ross alleges "[b]y entering onto the subject Premises, and/or the curtilage of that residential real property, without the property owner's prior consent and without an inspection warrant justifying any such entry, in order to post an order requiring removal of a lawfully parked motor vehicle, defendants . . . violated the Fourth Amendment to the United States Constitution." (Dkt. No. 1 at 8.)

"The Fourth Amendment's warrant requirement applies to entries into private premises to search for and abate suspected or declared nuisances." *Schneider v. Cnty. of San Diego*, 28 F.3d 89, 91 (9th Cir. 1994). The Fourth Amendment protection extends to curtilage, defined "by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." *United States v. Romero-Bustamente*, 337 F.3d 1104, 1107 (9th Cir. 2003) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)). But "the Fourth Amendment's protection of 'persons, houses, papers, and effects' does not apply to open fields." *Schneider*, 28 F.3d at 91. This is because "open fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance." *Oliver*, 466 U.S. at 179.

In this complaint, Mr. Ross fails to allege enough facts to support a plausible inference his vehicle was located in his home's curtilage when the abatement notice was posted. The complaint alleges "[t]his civil action is based upon . . . damages and harms sustained by Plaintiff ROSS on or about August 16, 2023, and thereafter, *both on and in the immediate vicinity of that residential real property* in the County of Lake commonly known as: 8707 Wight Way, Kelseyville, CA,

4

95451." (Dkt. No. 1 ¶ 20 (emphasis added).) But Mr. Ross does not specify where his vehicle was located with respect to his residential real property and what is meant by "on and in the immediate vicinity." Attached as Exhibit 2 to the complaint is "a public record created on or about August 16, 2023 . . . on behalf of Defendant Officer C. COLEN." (*Id.* ¶ 20.) While the complaint does not explicitly allege as much, the Court assumes the photos depict Mr. Ross's vehicle as it was tagged on August 16, 2023. But the photos without more do not support an inference Mr. Ross had a reasonable expectation of privacy in that location. Even the complaint's allegations about the August 23, 2023 vehicle break-in fail to specify where the car was located at the time of the break-in. (Dkt. No. 1 ¶ 1 (alleging "Mr. Ross informed LCSO's responding deputy that he had, at approximately 9:00 p.m., confronted an adult male intruder on the Premises who had broken into a locked motor vehicle thereby setting off the vehicle's car alarm").)

In opposition, Mr. Ross contends Defendant Colen lacked reasonable grounds to conclude the car was "abandoned, wrecked, dismantled or inoperative as was then required under Section 13.31 of the LCV Abandonment Ordinance" and that Defendant Colen lacked reasonable grounds to conclude the car was a public nuisance. (Dkt. No. 18 at 3.) But such arguments are beside the point. For Fourth Amendment purposes, the question is whether Mr. Ross "exhibited an actual, subjective expectation of privacy in the area entered" and if so, whether that expectation is "one that society is prepared to accept as reasonable and therefore legitimate." *Maisano v. Welcher*, 940 F.2d 499, 503 (9th Cir. 1991). To establish a reasonable expectation of privacy in a driveway, for example, a plaintiff "must support that expectation by detailing the special features of the driveway itself (i.e. enclosures, barriers, lack of visibility from the street) or the nature of activities performed upon it." *Id.*

Because the complaint fails to allege facts regarding the location of his vehicle and his reasonable expectation of privacy in that location, Mr. Ross fails to allege a Fourth Amendment claim related to the tagging of his vehicle. So, this section 1983 claim fails.

### 2. Fourteenth Amendment

Count Three also alleges "[b]y entering onto the subject Premises, and/or the curtilage of that residential real property, without prior notice given to the owners of a lawfully parked motor

5

vehicle or a duly noticed opportunity for a hearing, Defendants . . . violated the Fourteenth Amendment." (Dkt. No. 1 ¶ 34.) Mr. Ross appears to argue he was entitled to notice prior to the entry onto his property/its curtilage for purposes of tagging his vehicle. Mr. Ross does not cite—and the Court is not aware—of any case finding a procedural due process right to such notice. As discussed above, entry without a warrant implicates the Fourth Amendment's protections against unreasonable searches, rather than the Fourteenth Amendment's procedural due process protections.

To the extent Mr. Ross is arguing more process was due to dispute the determination his vehicle was a public nuisance, the Notice of Abatement provided "[i]f you believe the County should not abate and remove said vehicle(s) you have a right to file an appeal and be heard before the Lake County Vehicle Abatement Officer" and described the process for filing an appeal or a sworn statement disputing the determination. (Dkt. No. 1 at 17.) The opposition does not address why such process is constitutionally deficient.

Because Mr. Ross fails to allege facts supporting a reasonable inference his Fourteenth Amendment rights were violated, Mr. Ross's section 1983 claim premised on a Fourteenth Amendment violation fails. The Court GRANTS Defendants' motion to dismiss Count Three.

### B. Unlawful Arrest Claim (Count One)

Count One alleges "[a]t the time the Defendant . . . arrested Plaintiff ROSS, the arresting officers DID NOT have reasonable suspicion and/or probable cause." (Dkt. No. 1 ¶ 22.) The complaint does not allege the grounds for Mr. Ross's arrest.

"To prevail on his § 1983 claim for false arrest and imprisonment," Mr. Ross must "demonstrate that there was no probable cause to arrest him." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir.1998). Whether officers had probable cause to make an arrest "depends . . . upon whether, at the moment the arrest was made, . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964). "It doesn't matter . . . if [the arrestee] was charged with a different crime than that for which he was arrested."

6

1    *Blankenhorn v. City of Orange*, 485 F.3d 463, 473 (9th Cir. 2007).  "Probable cause may exist for
2    an arrest for a closely related offense, even if that offense was not invoked by the arresting officer,
3    as long as it involves the same conduct for which the suspect was arrested."  *Id.* (cleaned up).
4    "As long as the officers had some reasonable basis to believe [Mr. Ross] had committed a crime,
5    the arrest is justified as being based on probable cause."  *Id.* (cleaned up).

6          Defendants contend "the admission of the discharge of a 12-guage shotgun with neighbors
7    and an intruder in the vicinity is sufficient probable cause for an arrest under" section 246.3 of the
8    California Penal Code.  (Dkt. No. 17 at 7-8.)  Section 246.3 creates an offense when "any person .
9    . . willfully discharges a firearm in a grossly negligent manner which could result in injury or
10   death to a person."  "California courts have defined the elements of a section 246.3 offense to
11   include: '(1) the defendant unlawfully discharged a firearm; (2) the defendant did so intentionally;
12   and (3) the defendant did so in a grossly negligent manner which could result in the injury or death
13   of a person.'"  *United States v. Coronado*, 603 F.3d 706, 711 (9th Cir. 2010) (quoting *People v.*
14   *Overman*, 126 Cal. App. 4th 1344, 1361 (2005)).  The statute "does not require any intent to cause
15   harm."  *Id.*

16         Because Mr. Ross alleges he "did, in fact, discharge his weapon" but fails to allege facts
17   surrounding the circumstance of that discharge, the complaint does not support a reasonable
18   inference that the arrest was without probable cause. (Dkt. No. 1 ¶ 1.)  According to the
19   complaint, Mr. Ross "fire[d] a warning shot from his 12-guage shotgun in order to get the
20   intruder(s) attention and hopefully to scare the intruder(s) away."  (*Id.*)  But the complaint does not
21   allege where Mr. Ross stood when he fired the warning shot, in what direction he fired it, and who
22   else—if anyone—was nearby when he fired the shot.  For example, he alleges "[n]eighbors and
23   other persons were present to observe and overhear the verbal exchanges that occurred after Mr.
24   Ross encountered the intruder," (*id.*), but does not allege where those neighbors were.  There are
25   some facts about the warning shot in Exhibit 4 to the complaint, which Mr. Ross alleges is "a true
26   and correct photocopy of a public record prepared and then issued by the Lake County District
27   Attorney's Office . . . pertaining to the Lake County District Attorney's rejection of the criminal
28   charges to be filed against Mr. Ross."  (Dkt. No. 1 ¶ 20.)  "A court may consider exhibits for the

purposes of a motion to dismiss when they are submitted with a complaint." *Shah v. Cap. One Fin. Corp.*, No. 24-CV-05985-TLT, 2025 WL 714252, at *3 (N.D. Cal. Mar. 3, 2025) (citing *Durning v. First Bos. Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987)). But the form itself concludes it "is unclear if the firing of the shotgun was appropriate under the circumstances," in part because it was "unclear how close any nearby residences were located." (Dkt. No. 1 at 22.)

Because Mr. Ross does not allege sufficient facts related to the "warning shot" he discharged, including facts as to what the arresting officers knew about this warning shot, the allegations do not support a plausible inference that the arresting officers lacked probable cause to believe Mr. Ross committed a section 246.3 violation.[2] Drawing inferences in Mr. Ross's favor, given Mr. Ross's allegation that he fired a "warning shot" with neighbors around, and without any other relevant factual allegations other than the District Attorney's suggestion the firing may not have been appropriate, Mr. Ross has not plausibly alleged the arresting officers lacked probable cause.

### C. DNA Swab (Count One)

In Count One, Mr. Ross alleges that Defendants acted "unlawfully and unconstitutionally in violation of ROSS's privacy right(s) under the California Constitution and/or the United States' Constitution" when they "seize[d] a sample of Plaintiff ROSS's DNA following his arrest." (Dkt. No. 1 ¶ 25.) Defendants move to dismiss on the ground this claim is foreclosed by *Maryland v. King*, 569 U.S. 435 (2013).

In *King*, the Supreme Court considered "whether the Fourth Amendment prohibits the collection and analysis of a DNA sample from persons arrested, but not yet convicted, on felony charges." *Id.* at 442. The Court concluded the Fourth Amendment applies because "using a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search." *Id.* at 446. In assessing the reasonableness of the search, the Court recounted the substantial

---

[2] Defendants also assert the "allegations of a discharge of a 12-guage shotgun with neighbors and an intruder in the vicinity reasonably provide separate probable cause for an arrest" based on violations of California Penal Code sections 240 (assault), 245 (assault with a firearm), and 417 (brandishing). (Dkt. No. 17 at 7-9.) Having concluded the allegations are insufficient to determine there was not probable cause for a section 246.3 violation, the Court need not address these additional Penal Code sections Defendants raise.

government interest in identification of the arrestee for purposes of determining whether the individual should be released on bail and avoiding inordinate risks to facility staff and detainees. *Id.* at 451-55.  Meanwhile, a buccal swab involves a brief and minimal intrusion, and Maryland's law—authorizing DNA collection from felony arrestees—had security procedures, for example, that the DNA sample cannot be placed in a database until the individual is arraigned and "a judicial officer ensures there is probable cause to detain the arrestee on a qualifying serious offense." *Id.* at 443, 464-65.  So, the Court held, "[w]hen officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment." *Id.* at 465–66.

Subsequently, the Ninth Circuit considered whether California's DNA collection scheme—which requires all persons arrested for or charged with any felony or attempted felony to submit DNA samples for inclusion in law enforcement databases—was "constitutional as applied to *anyone* arrested for, or charged with, a felony offense by California state or local officials." *Haskell v. Harris*, 745 F.3d 1269, 1271 (9th Cir. 2014) (en banc) (quotation marks omitted).  The Ninth Circuit held that "[a]fter *Maryland v. King*, the answer is clearly yes." *Id.* (citation omitted).

*King* and *Haskell* involved individuals arrested for felony offenses.  In this case, Mr. Ross does not allege on what grounds he was arrested.  Exhibit 4 suggests he may have been arrested for violating Penal Code sections 246.3 and 135.  (Dkt. No. 1 at 21.)  Section 246.3 can be charged as a felony, *see* Cal. Penal Code § 246.3(a); Penal Code § 1170(h), although the trial court can exercise its discretion to impose sentence as either a felony or misdemeanor offense.  *People v. Feaster*, 102 Cal. App. 4th 1084, 1094 n.3 (2002).  Section 135 is a misdemeanor.  Cal. Penal Code § 135 ("A person who . . . willfully destroys, erases, or conceals" evidence "is guilty of a misdemeanor.").  But lacking allegations as to the grounds for Plaintiff's arrest, the Court cannot conclude that Mr. Ross plausibly alleges the DNA swab was unconstitutional.  So, the Court dismisses the Count One claim as it relates to the DNA swab.

9

### D. Tom Bane Civil Rights Act (Count Two)

Count Two alleges Defendants "violated Plaintiff ROSS's rights under California Civil Code § 52.1" and "COUNTY OF LAKE is vicariously liable, pursuant to California Government Code § 815.2 for violation(s) or rights by its employees and agent." (Dkt. No. 1 ¶¶ 30-31.) Defendants move to dismiss on the ground "the Bane Act claim (and all state law claims) is untimely and barred for failure to comply with California Government Code section 945.6." (Dkt. No. 17 at 14.) The Court agrees.

"Government Code section 945.6, subdivision (a)(1) prescribes that an action against a public entity must be brought within six months of written notice of a claim denial." *Him v. City & Cnty. of San Francisco*, 133 Cal. App. 4th 437, 441 (2005). One issue is Mr. Ross does not allege an exact date for purposes of calculating the section 945.6 filing deadline. He alleges he filed "a timely government tort claim . . . which was subsequently rejected *on or about* June 24, 2024." (Dkt. No. 1 ¶ 19 (emphasis added)). If the rejection date for purposes of section 945.6 was precisely June 24, 2024, then the deadline to file the complaint was December 24, 2024, and the complaint filed on December 30, 2024 was untimely.

In their motion, Defendants convey their understanding that "the proof of service actually shows the date of mailing of the rejection was June 26, 2024." (Dkt. No. 17 at 14.) But even were June 26, 2024 the date the rejection was "deposited in the mail," *Him*, 133 Cal. App. 4th at 442, the deadline to file would be December 26, 2024. So, even in this circumstance, the complaint filed on December 30, 2024 was untimely. *See Edgington v. Cnty. of San Diego*, 118 Cal. App. 3d 39, 42 (1981) (affirming that a complaint filed "one day too late" was barred by the statute of limitations in section 945.6(a)(1)).

In opposition, Mr. Ross contends "the subject filing was hand-delivered to the Court Clerk's Reception Box on Friday, December 27, but was not back-dated by the Court Clerk who received the filing the following Monday" and requests the Court judicially notice "a true and correct photocopy" of the envelope with a "Received" stamp dated December 27, 2024. (Dkt. No. 18 at 5; Dkt. No. 19.) But a stamped envelope is not appropriate for judicial notice. *See* Fed. R. Evid. 201(b) (stating "[t]he court may judicially notice a fact that is not subject to reasonable

10

1   dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can
2   be accurately and readily determined from sources whose accuracy cannot reasonably be
3   questioned"). And regardless, a December 27, 2024 filing would have still been untimely based
4   on a June 26, 2024 mailing date.

Mr. Ross also states he "is willing and able to affirm, under penalty of perjury, that he brought his complaint to the Court Clerk's address at 450 Golden Gate Ave, San Francisco on Tuesday, December 24, 2024 for timely filing, but that the building had already been locked down for the Christmas Holidays." (Dkt. No. 18 at 5.) If December 24, 2024 was a court holiday, then the period for filing would be "extended to and includ[e] the next day that is not a holiday." *See* Cal. Civ. Proc. Code § 12a; *see also Deleon v. Bay Area Rapid Transit Dist.*, 33 Cal. 3d 456, 457 (1983) (holding "section 12a, which extends the time period when the last day for performing an act falls on a holiday, is applicable to the time limit of Government Code section 945.6 for bringing an action against a public entity"). But, the complaint does not allege that December 24, 2024 was a court holiday, and it alleges Mr. Ross's claim was denied on June 24, 2025. So, based on the complaint's allegations, the claim was untimely. The Court therefore GRANTS Defendants' motion to dismiss Count Two.

### E. Section 1981, 1985, and 1986 Claims

Mr. Ross's complaint references sections 1981, 1985, and 1986. (Dkt. No. 1 ¶¶ 6 26.) "Defendants submit that the allegations do not invoke this [sic] sections." (Dkt. No. 17 at 10.) The Court agrees that Mr. Ross fails to state claims for violations of these sections.

Section 1981 guarantees that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). A plaintiff bringing a section 1981 claim "bears the burden of showing that race was a but-for cause of [his] injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020). Section 1985 prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3). A section 1985(3) claim requires:

11

> (1) a conspiracy;
> (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and
> (3) an act in furtherance of this conspiracy;
> (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1536 (9th Cir.1992). As to the second element, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). And "[s]ection 1986 imposes liability on every person who knows of an impending violation of section 1985 but neglects or refuses to prevent the violation." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). "A claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985." *Id.*

As Mr. Ross fails to allege race-based discriminatory animus or that race was a but-for cause of an injury, he fails to allege Defendants' conduct fell within the purview of these statutes. So, the Court GRANTS Defendants' motion to dismiss the section 1981, 1985, and 1986 claims.

### F. Claims against the County and its Departments

Defendants move to dismiss the claims asserted against the County of Lake and its departments on the ground those claims "appear to be inappropriately based on *respondeat superior*, and wholly omit any allegation based on policy." (Dkt. No. 17 at 12.)

"Civil rights suits against local governments for constitutional violations by its officers cannot proceed on respondeat superior liability." *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1167 (9th Cir. 2022). "[A] plaintiff must instead establish that the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation they suffered." *Id.* (cleaned up); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 684 (1978). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997).

In this case, the complaint does not allege facts permitting a reasonable inference that a

12

1  policy, custom, or practice of County of Lake—or Lake County Sheriff's Office, Lake County
2  Community Development Department, or Lake County Abandoned Vehicle Abatement
3  Authority—caused a constitutional violation. Nor does the complaint allege facts permitting a
4  reasonable inference "of a municipal training policy that amounts to a deliberate indifference to
5  constitutional rights." *Vanegas*, 46 F.4th at 1167 (cleaned up) (noting "*Monell* liability can turn
6  on a municipality's failure to train its officers" when that failure the "amount[s] to a deliberate
7  indifference to the rights of persons with whom the police come into contact").

8  That said, having dismissed the claims against County of Lake and its departments, the
9  Court declines to permanently dismiss those defendants from this action at this time. Mr. Ross's
10 amended complaint may be able to state a claim against one or more of the entity defendants. *See,*
11 *e.g.*, *Maricopa, Cnty. of, Arizona*, 116 F.4th 935, 939, 947 (9th Cir. 2024) (holding "Maricopa
12 County's policy of posting photographs of arrestees" was not "constitutionally permissible" since
13 "[t]he state may not punish pretrial detainees without an adjudication of guilt"). So, the Court
14 declines to dismiss County of Lake and Lake County Sheriff's Office from this action.

15 **G.   Official Capacity Claims**

16 Defendants contend the claims against individual defendants in their official capacity
17 "should be dismissed as redundant to naming the County." (Dkt. No. 17 at 11.) "An official
18 capacity suit against a municipal officer is equivalent to a suit against the entity." *Ctr. for Bio-*
19 *Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008).
20 "When both a municipal officer and a local government entity are named, and the officer is named
21 only in an official capacity, the court may dismiss the officer as a redundant defendant." *Id.*

22 Mr. Ross does not oppose dismissal of the defendants named in their official capacity.
23 And their presence in this suit does not further any interests. *See Lewis v. Clarke*, 581 U.S. 155,
24 162 (2017) ("In an official-capacity claim, the relief sought is only nominally against the official
25 and in fact is against the official's office and thus the sovereign itself. . . . The real party in interest
26 is the government entity, not the named official."). So, the Court dismisses the official capacity
27 claims against Rob Howe, Demetrius Donaldson, Jeffrey Mora, Corey Paulich, and Mireya Turner
28 as redundant of the claims against the County and its departments.

13

### H.   Individual Capacity Claims

Defendants contend the complaint is deficient as to the individual capacity claims against Demetrius Donaldson, Jeffrey Mora, Corey Paulich, and Robe Howe. In addition to the official capacity suit, Defendants Donaldson, Mora, Paulich, and Rowe are all sued in an individual capacity. (Dkt. No. 1 ¶¶ 9, 11, 12, 13.)

In a section 1983 claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Aside from the recitation of the parties (Dkt. No. 1 ¶¶ 9, 11, 12, 13), the complaint contains no mention of Defendants Donaldson, Mora, Paulich, and Rowe. And so, the complaint lacks the requisite specific factual allegations regarding these defendants' alleged violations of the constitution.[3] So, the individual capacity claims against Defendants Donaldson, Mora, Paulich, and Rowe are dismissed.

### CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss Count One (including the embedded claims), Count Two, and Count Three. The Court also dismisses the individual capacity claims against Demetrius Donaldson, Jeffrey Mora, Corey Paulich, and Robe Howe as the complaint fails to allege facts that plausibly support an inference any of these defendants violated Mr. Ross's constitutional rights. All of these claims are dismissed with leave to amend.

The Court dismisses the official capacity claims against Rob Howe, Demetrius Donaldson, Jeffrey Mora, Corey Paulich, and Mireya Turner without leave to amend as redundant of the claims against the County and its departments. The Court also dismisses the section 1981, 1985, and 1986 claims without leave to amend. At the hearing, Mr. Ross stated he does not seek leave to amend these claims.

An amended complaint is due by June 20, 2025. The complaint must set forth each separate claim in a separate cause of action and each cause of action must identify the specific

---

[3] While Demetrius Donaldson is listed as an investigating officer in Exhibit 4 to the complaint, the mere mention of his name is insufficient to allege Officer Donaldson violated the constitution.

14

1  defendant(s) against whom the claim is made.  For example, to the extent Mr. Ross alleges the

2  publication of his photo violated his rights, that claim should be pled in its own cause of action.  If

3  Mr. Ross elects not to file an amended complaint, judgment will be entered in Defendants' favor.

4  The Court schedules an initial case management conference for September 3, 2025 at 2:00

5  p.m. via Zoom video.  A joint case management conference statement is due one week in advance.

6  **IT IS SO ORDERED.**

7  Dated: May 23, 2025

_____

JACQUELINE SCOTT CORLEY
United States District Judge

15